The first case this morning is People v. Charmel Brown for the appellant Mr. Ackerman and for the appellee Mr. McNeil. You may proceed. Thank you. With great support, Mr. McNeil. I have the privilege of having Mr. Plunera from Chicago Heights with me this morning. We are appealing Mr. Brown's case on direct appeal and the issues are straightforward, I believe. Concerning, and if I read the Fourth District rules correctly, I need not recite facts unless they're otherwise important. Would that be a fair statement? It is. The simple facts as they relate to discovery and continuance, which is an essential part of our appeal, concern the state's reluctance, indeed failure, to tell defense counsel in advance of trial that one of his two probative reasonable doubt witnesses in fact had identified defendant during a photo spread. The state learned about this approximately two to three months before trial and when challenged in open court the simple statement from the prosecutor was, we thought he would figure it out, or words to that effect. The state proffered the information to defense counsel immediately in advance of jury selection. This was a special veneer called by the circuit court because the trial and the anticipated trial time was some 12 to 14 days. As it turned out, it was 10 days. Having said that, I think we believe the legal questions are, does the state have the duty, the responsibility under our discovery rules to provide information, whether it's inculpatory or exculpatory, prior to trial so that defense counsel may prepare, investigate, and so forth? The answer is clearly yes. We know that from our own authorities, including People v. Weber. Counsel, wasn't there a supplemental police report that was filed indicating this error had been made? Not according to the detective Shepard, who testified during the trial within the trial, that there were no additional reports made. It was a verbal response to the assistant state's attorney who had asked two or three months before trial about the photo array mix-up. And his response during the trial within the trial was, it was our screw-up. We told the state's attorney. That's all we know. We did not make any additional reports. That's my reading of the record, and that's what Detective Shepard testified to, so I'll stay with that. Having said that, the circuit court put the defense at an extremely distressful disadvantage. Defense counsel had posited his not-guilty theory, or not-beyond-reasonable-doubt theory, on the proposition that there were dual witnesses who would testify that it was not the defendant who did the shooting. One was a Ms. Thomas, who indeed so testified, and one was Ms. Handy, who, when shown a photo array, could not identify the accused. As support for that, defense counsel had subpoenaed Ms. Handy, who the state revealed at the date, I'm sorry, just before jury selection, that she had, in fact, identified defendant in the photo array. Having said that, the question becomes where defense counsel is actually surprised, and I think it's fair to say he was, and I think the trial court along the way did find there was a discovery violation. So we can assume that since the state has not assailed the circuit court's finding that there was a discovery violation, which is why he kept out Ms. Handy's photo spread identification testimony, there clearly was actual surprise. Now, does it have to be conjunctive and actual prejudice, or is it or prejudice? We take the position based on People v. Globjoy that the applicable word is or, not and. And we have support for it in our brief in People v. Globjoy and People v. Robinson, both Illinois Supreme Court decisions. So if we take our facts, day of trial, just before jury selection, prosecutor advises defense counsel for the first time, oh, by the way, the witness you subpoenaed, Ms. Handy, she did identify your client in the photo spread. What? What? And indeed, the police reports support the defense version. According to Detective Shepard, as laid out in our brief, when asked the question, going along with the police reports and the information, would that have shown she did not identify defendant, lead Detective Shepard, answer is yes. So there's no question about it. I'm very confused because I thought Shepard had a January 16, 2008 supplemental report that reflected Handy identified the defendant. The reason for the trial within the trial was that it was not until the day of trial where the information was disclosed to the defense and the trial court. Counsel, did you receive, were you the trial attorney? I'm sorry? Were you the trial attorney? I was not. Okay. I was not, thank you. Thus our position, if we take the record, even an elect most favorable to the state, but I question whether when we're talking about a discovery violation where the court ruled, the state had, in fact, violated the discovery rules, whether you take that an elect most favorable to the defense or the state. I suggest it's an elect most favorable to the defense. Having said that, was he entitled to a continuance? The law is pristine. People v. Walker, which my opponent, in its very fine brief, does not even cite. In our opening brief, we talked about the Illinois Supreme Court decision of People v. Walker. Justice Freeman wrote the decision. Is it a serious case? Yes. Was there a surprise? Yes. Is the defendant entitled to effective assistance of counsel? Yes. Did the trial court even ask, how long a continuance do you need? In this case, answer is no. One of the prongs Justice Freeman pointed out in Walker was that that should be a natural question. By the way, if you need a continuance, how long do you want? The question was never asked because this court, not this court, the trial, was dead set to go ahead. And that's what happened, which gets us to jury selection. I'm not going to ponder Rule 431B. I read the court's April 2011 decision on remand in Yosef, I believe it is, where the court held that based on People v. Thompson, on a plain error basis, there really isn't much of an argument. Okay. My query to the court is, doesn't the state owe the trial court the responsibility of pointing out to the trial court, just as defense counsel does? By the way, Your Honor, you only asked two of the four demanding 431B questions. Or you only asked three. Or you forgot to ask any. Strikes me that in our system of criminal justice, the prosecution, like the defense, has a duty to advise the court. Indeed, that's our role. Having said that, I'll say no more about that. Concerning Batson, which I euphemistically call striking the single black juror in a case where the defendant is charged with first-degree murder at sec. He is a black American. The juror was a black American. The only black in the – I'm sorry, there were two blacks in the – I thought there were two, yeah. I was going to say, I thought there were two. The second gentleman was never called the first one. The state asks no questions, strikes the juror, Mr. Wauer. When defense counsel poses the problem with the court, the court says, you haven't made a prima facie case, or words to that effect. Well, what is a prima facie case? One black available for jury service, apparently. A case where the state knows in advance that we're talking about who is light-skinned African American, who is dark-skinned African American. How do we know this? Because the pretrial discovery statement of Ms. Thomas, who was interviewed by the police, and she could not identify defendant as the shooter. She was in the parking lot. She described the shooter as dark-skinned black, and the shooter was light-skinned black. And that is, as we know from defense counsel's opening statement, without contradiction in this record, is one of the major methods that African Americans identify one another. Skin tone, light-skinned, medium-skinned, dark-skinned, cocoa-skinned. Why did the state strike Mr. Wauer? You can draw whatever inference you like. But the fact of the matter is the trial court erred in saying that defense counsel, under the facts of this case, did not present a situation, a prima facie situation, that warranted further query. If the court agrees, the court has multiple methods of dealing with it. I won't get into that. I'll leave that for the state. I asked the court to consider this. The state's primary, indeed, the state's only identification witness, Ms. Megan, testified on direct after she allegedly saw a defendant shoot the victim. She told the jury, I said and I yelled out, you won't get away with this one. This one. We're not making this up. It's in the record. Defense counsel objected. Trial court declined to strike this one. Does that give rise to evidence, inference, of a separate crime defendant has committed? We believe the answer is yes. Did the court strike it? No. Did the court even comment on it? No. The court denied, or at least didn't sustain the defense objection. What message does that give a jury? In a first-degree murder case where the witness testifies, you won't get away with this one. I suggest, if the court please, the answer is that this defendant has committed other crimes. Therefore, he's a bad person. Therefore, you can send him to prison, even though he may not be guilty of this crime. He is certainly deserving of punishment. That, if the court please, is the direct appeal for the defendant. And I ask the court to consider, and I know it's poor appellate practice to read from anything at the bench, but I ask permission to rest, just read one thing. Justice Scalia recently in Davis v. Washington spoke in terms of when confrontation clause violations give rise to reversible error. And he wrote, just two sentences, when this occurs, the confrontation clause gives the criminal a windfall. We may not, however, vitiate the constitutional guarantees when they have the effect of allowing the guilty to go free. Davis v. Washington, 547 U.S. at 833, 2006. We are not asking that Charmel Brown go free. We are asking that he be given the opportunity to be tried anew where the trial would be fair. Thank you. Mr. Reckerman, I have one more question for you. I want to be sure I understand your argument on the photo array issue. Yes, ma'am. Is it your argument that defense counsel at trial did not have prior knowledge through discovery that Ms. Handy had identified the defendant through a photo array? Correct. That's your claim? That's what the circuit court found. The circuit court conducted interim hearings absent the jury during the first five days of trial. So he would send the jury out, maybe starting the third day of trial, and in the afternoon they would have the mini-trial. What happened? And at the end of the mini-trial, before the state rested, the court held, based on the testimony of Mr. Shepard and the prosecutor. Detective Shepard, the lead detective, said, Whoa. The prosecutor called us in about September, said there was a problem with the photo array, wanted it straightened out, wanted an explanation. This is his testimony I'm summarizing. He and his sister detective, who sat right across the table from him, and they had the whole file, went over it together. The sister detective had shown Ms. Handy the various forms. The detective Shepard showed her the photo spreads. The forms had photo spread numbers. There's no question it was mislabeled. The photo arrays were mislabeled. My question to you is you're claiming that defense counsel, through discovery or any other way, had no prior knowledge that Handy, had identified the defendant. Court, please, I am not claiming. I am echoing what the circuit court judge found after the fourth day of these hearings. Those are the district of the circuit court judge's words. And when the prosecutor was asked by the judge, and I'll point it out in my rebuttal exactly what day it was, when the circuit court judge asked the prosecutor, when did you tell defense counsel? She said, right then, on the day of trial. But what she told defense counsel was that the photo arrays had been mislabeled, right? Wrong. That's what she told him at the start of this trial, on the day of jury selection. By the way, she did identify your client. The photo array ID forms are mislabeled. What? That is what happened. And I'll stand on the record. Thank you. Thank you, Mr. Ackerman. Mr. O'Neill. Please, the court. Counsel. First, Justice Pope is right. There are actually three pieces of evidence that defense counsel had that indicated that Ms. Handy did identify the defendant. There were the written reports by Detective Shepard and Bunyard, and there was also the taped statement, the interview with Ms. Handy herself, where she identified. There were mixed up photo arrays, that's true, but defense counsel had, if you want to go just by numbers, they had three pieces of evidence that Ms. Handy did identify the defendant, and two pieces, if you want to count both the photo arrays, that she didn't identify the defendant. Also I think important is the grand jury, which happened a year before that, same defense counsel for defendant. This was more than a year before jury selection even began. The police officer testified that there was a lady at the bar who heard the defendant say he had a gun, and defense counsel specifically questioned this police officer and heard this, so he was on notice at least a year before that that there was somebody, obviously Ms. Handy, somebody at the bar who identified the defendant. The grand jury proceedings, was the name ever mentioned? Was Ms. Handy's name ever mentioned? No, but together, unless there was another lady at the bar. As I understand it, there was a pretty crowded place at the American Legion that night in Champaign. But that, happening a year before that, along with the three pieces of evidence that they had at the same time as the state, there was, it needs to be emphasized, there was no piece of evidence that the defendant didn't have during this. They just didn't come to the same conclusions that the state did beforehand. Also about the actual surprise or prejudice, the defendant emphasizes the people versus Lovejoy. In that case, the Supreme Court dealt with the state failing to disclose a report from an expert witness. Again, here, there was no report from an expert witness or any supplemental reports, as the defendant admits. Lovejoy does use the language actual surprise or prejudice with the word or in there when talking about undisclosed evidence. But directly before that, the Lovejoy court quotes, a new trial should only be granted if the defendant who bears the burden of proof demonstrates that he was prejudiced by the discovery violation and the trial court failed to eliminate the prejudice. So, it seems that prejudice is required, but even assuming that actual surprise is all the defendant needs to demonstrate here, that burden is on the defendant, and here the defendant failed to demonstrate actual surprise. Even if you want to assume a defense counsel story that he completely missed the three pieces of evidence that he had where Miss Handy did identify the defendant and only had the mixed up photo arrays, there were still two days to prepare before his opening statement even, let alone Miss Handy's examination, which happened a week after that, more than a week, after the jury selection, the first day of jury selection when a defense counsel allegedly found out. Judge DePinas did not allow any evidence of the photo array identification at trial, did he? No, he didn't, which was a gift really to the defendant because she was allowed to testify and again, the court didn't find that, it wasn't a finding that defense counsel had just learned of that, I think it was a finding that only the photo arrays were mixed up and confusing and therefore not allowed into evidence. Obviously, Miss Handy's testimony was still allowed in. And again, with prejudice, this wasn't the state's most critical evidence by a long shot. They had an eyewitness, Steven Malin, testify, she watched the defendant commit the crime, shoot the victim,  there was corroborating testimony from police consistent with Mingham's testimony and this by itself, with or without Handy's identification, was sufficient to convict the defendant. He wasn't prejudiced even if the state did fail to disclose any evidence. The outcome of the trial wouldn't have been different. 431B, as defense counsel mentioned, People v. Thompson held that failure to comply fully with Rule 431B isn't structural error unless there's evidence presented of a biased jury. Relaxation of the forfeiture rules based on plain error isn't warranted. Here, there was no evidence presented of a biased jury or any prejudice based on the 431B questions. Also, the trial court strictly complied with 431B, asking all four questions to all the jurors. As far as the Bastin claim concerning veneer person Devin Ware, the defendant clearly failed to establish a case of purposeful discrimination based on the fact that Ware was African-American. There was no pattern, as defense counsel mentioned, there were only two prospective African-American jurors and only one was Devin Ware was being contested here. So there was no pattern of excluding African-American veneer persons in this case. Do you think an argument could be made, and I understand that Mr. Ware was the only juror who expressed familiarity with the American Legion? He was the only juror who had been to the location, yes. Right. But if we would suggest that the American Legion is located in a part of Champaign, Illinois, which is in a primarily African-American neighborhood, would that familiarity just be commensurate with race? Well, I think it's not clear in the record, but there's also some evidence of the knowledge that that American Legion Hall is a de facto nightclub kind of place. And again, this is just Mr. Ware's actually being there and being familiar with it. He's been to the outside of it, not the inside. Right, but he was the only... I mean, it didn't even come to where a race-neutral explanation was even needed. But if it did come to that, that was... Well, I'm suggesting that in context, the allegedly race-neutral explanation is in fact a racial explanation because of where the American Legion is located in Champaign, Illinois. I think that would be a stretch. To make attendance at an American Legion Hall race space I think would be a major stretch for a defendant to make. Well, in Springfield, for instance, if the trial were held in Springfield and the event occurred at Max Lounge, Max Lounge is predominantly African American and most times exclusively African American. If it happens at Max Lounge and you can discharge a juror because you're familiar with Max, you're also saying we're discharging a juror because that person's African American. Well, I think a race-neutral explanation would be that any outside knowledge of this place would be... What relevance does knowledge of a place have to do with service on jury? I mean, didn't the shooting happen in the parking lot? Yes. Okay. It could have been a parking lot at Schnucks. What does knowledge of the American Legion have to do with anything? If you were prosecuting the case, why would you dump a juror just because he or she was familiar with the location of the crime? Well, I would be more familiar with that location and I would presumably have a good reason. But your knowledge of the location, what's the relevance of that? I mean, the testimony is the defendant pulled a gun and shot somebody. Whether it happened at the American Legion, Max Lounge, Schnucks parking lot, or right in front of a state house, it doesn't really matter, does it? The location doesn't matter. What the witness has testified to was he pulled a gun, he shot a guy. Again, there was no pattern of any discrimination based on potential jurors being African American. One peremptory challenge, I mean, his body language could have been disinterested. Well, nothing of that is in the record. What's in the record is that he knew about the American Legion. And that there's a peremptory challenge. Why? I mean, just like the Supreme Court stated, in many instances there will be no single criterion that serves as the basis for the decision whether to excuse a particular veneer person. A characteristic deemed to be unfavorable in one, and hence ground for a peremptory challenge. Which may, in a second perspective juror, be outweighed by other favorable characteristics. If there were ten or even two or three African Americans, maybe there would be a stronger case, but here there is one. And with a specific reason exclusive to him that he could have been dismissed on, that being that he knew the location was familiar and had been to the location. As for the other crimes testimony argument, this one was also forfeited. A defendant didn't include this in his post-trial motion. Assuming it isn't forfeited, though, there was no error. During direct examination, as defense counsel said, Teagan Meehlin was asked if she said anything to the defendant after the shootings happened. She testified that she told the defendant he wouldn't get away with this one. This was the only time in the testimony, and in fact the whole case, that the word one was used after wouldn't get away with this. The state never pursued this as being other crimes testimony. There was an objection, but it had nothing to do with other crimes testimony. Defense counsel only argued that this statement improperly bolstered the witness' credibility. For a trial court to bring it up on its own that it was other crimes evidence would have been more of an abuse of discretion than just letting it go, since there was no objection on that issue anyway. The state repeated a couple times during argument that Meehlin told the defendant he wouldn't get away with this or he wouldn't get away with it, leaving off the word one so it wasn't pursued by the state as other crimes evidence or implied in any way that it was other crimes evidence. Any connection to that being other crimes evidence would be a stretch. Finally, there was no cumulative effect of prosecutorial misconduct, as all of the arguments have been explained. If there are no more questions. Concerning the Batson question, the familiarity of Devenoir was shared by the juror, Ms. Chevarria. She was familiar with the exterior of the hall, but the next day she responded that her office works occasionally with the prosecutor's office, and she was excused. Those were the only two who had any familiarity with the exterior of the hall. Regarding the lack of pattern, it's ludicrous, it's almost insulting to suggest that the lack of pattern means there was no Batson-related offense here, because you can't have a pattern when you have one. So you have an inference. In Johnson v. California, the United States, and I have this at pages 14 and 15 in my reply brief, I won't read it, the court can consider it, the measure or standard of review, whatever it may be, is mixed, is mixed. And in Johnson v. California, 125 Supreme Court at 2417, the court simply says, we do not intend the first step, i.e. prima facie, to be so onerous that a defendant would have to persuade the judge on the basis of all the facts, some of which are impossible to know with any certainty, that the challenge was more likely than not the product of purposeful discrimination. Instead, a defendant satisfies the Batson first step by producing evidence sufficient to permit the judge to draw an inference that discrimination has occurred. The facts are the facts. No African-American jurors, white-skinned, medium-skinned, dark-skinned, are identifying data as all the witnesses who were African-American suggested. Now, in answer to the court's query, I refer the court regarding whether there were I refer the court to pages 21 and 22 of our opening brief, where the transcript is laid, I'm sorry, 21, 22, and 23. The transcript is set forth, the state has never challenged any of it or suggested that we put in improper references. And at page 23, on page 22 at the bottom, the court this morning asked when the defendant found out about it. When questioned by the circuit court, the prosecutor said, probably, comma, frankly, comma, last week when we were getting ready for trial, we thought he had figured that out on his own because it was all provided to him and it would seem so obvious to us. We didn't see anything exculpatory. Number one, we're not talking about inculpatory or exculpatory because our discovery rules are not framed that way. Secondly, if it was so darn obvious to the prosecutor, why did they, both of them, contact Detective Shepard and say, what happened here? We can't figure it out. If they couldn't figure it out and had to reach out to Detective Shepard, who made no supplemental report, why would the defendant figure it out? How could the defendant figure it out? The answer is he couldn't. Thank you. Thank you, counsel. It's been a privilege appearing before the court. Thank you. We'll stand at recess for a brief moment before directing us to the next case.